**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JANE DOE (N.A.O.),<br><br>Plaintiff,<br><br>v.<br><br>WYNDHAM HOTELS & RESORTS, INC., *et al.*,<br><br>Defendants. | No. 24cv11510 (EP) (JBC)<br><br>**MEMORANDUM ORDER** |

**PADIN, District Judge.**

Plaintiff Jane Doe (N.A.O.), an Indiana resident and alleged survivor of sex trafficking, brings this action under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595, against Defendants Wyndham Hotels & Resorts, Inc. ("Wyndham"), Akshar Indianapolis Hotel, LLC d/b/a Wyndham Indianapolis Airport ("Akshar"), and Nexus Hospitality Management Indianapolis, LLC ("Nexus"). D.E. 62 ("Amended Complaint" or "Am. Compl."). Plaintiff alleges that, from April 1, 2011 through September 30, 2015, she was repeatedly trafficked at the Wyndham Indianapolis Airport hotel in Indianapolis, Indiana (the "Subject Hotel"). *Id.* ¶¶ 26–30. Plaintiff asserts beneficiary liability against all three Defendants under § 1595(a) and additionally seeks to hold Wyndham vicariously liable for the alleged TVPRA violations of Akshar and Nexus. *Id.* ¶¶ 118–28.

Three motions are pending before the Court (together, the "Motions"). Akshar moves to dismiss Plaintiff's claim only to the extent she seeks recovery for trafficking that occurred before December 31, 2014, which Akshar contends is barred by the applicable statute of limitations. D.E.

68-1 ("Akshar Motion" or "Akshar Mot.").[1] Wyndham moves to dismiss the claims against it under Federal Rule of Civil Procedure 12(b)(6) or, alternatively, for a more definite statement under Rule 12(e). D.E. 69-1 ("Wyndham Motion" or "Wyndham Mot.").[2] Nexus separately moves to dismiss under Rule 12(b)(6), principally arguing that Plaintiff impermissibly pleads against Akshar and Nexus collectively; Nexus alternatively adopts Akshar's limitations argument. D.E. 88-1 ("Nexus Motion" or "Nexus Mot.").[3] Plaintiff opposes the Motions, D.Es. 72 ("Pl.'s Wyndham Opp'n"), 73 ("Pl.'s Akshar Opp'n"), and 89 ("Pl.'s Nexus Opp'n"), and Defendants reply, D.Es. 74 ("Akshar Reply"), 75 ("Wyndham Reply"), and 90 ("Nexus Reply").

The Court decides the Motions without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons explained below, all three Motions will be **DENIED**.

## I. BACKGROUND

### A. Factual Background[4]

Plaintiff is an Indiana resident. Am. Compl. ¶ 10. In early 2011, while homeless and caring for her infant son, she accepted a woman's offer of a place for her and her son to stay. *Id.* ¶ 26. Instead, Plaintiff alleges she was forced into commercial sex trafficking. *Id.* Her trafficker controlled her "through threats of force, psychological abuse, and manipulation, including threats

---

[1] Akshar filed its notice of Motion at D.E. 68. The Court refers to Akshar's memorandum of law as its Motion.

[2] Wyndham filed its notice of Motion at D.E. 69. The Court refers to Wyndham's memorandum of law as its Motion.

[3] Nexus filed its notice of Motion at D.E. 88. The Court refers to Nexus's memorandum of law as its Motion.

[4] For purposes of these Motions, the Court accepts Plaintiff's well-pleaded factual allegations as true and draws reasonable inferences in her favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

to evict her and her infant son if she did not comply." *Id.* From April 1, 2011 through September 30, 2015, Plaintiff was forced to engage in commercial sex acts numerous times per day for her trafficker's financial benefit. *Id.* ¶¶ 26–30.

Much of that trafficking occurred at the Subject Hotel. *Id.* ¶¶ 14, 27. Akshar and Nexus are the hotel-level entities, and Plaintiff refers to them collectively as the "Franchisees" or "Franchisee Defendants." *Id.* ¶ 17. During the relevant period, they allegedly "owned, operated, controlled, and managed" the Subject Hotel and employed its personnel. *Id.* ¶¶ 15–17, 35. Wyndham is the hotel-brand defendant. The Subject Hotel operated under the Wyndham brand, and Plaintiff alleges that Wyndham exercised authority over aspects of the hotel's systems and operations. *Id.* ¶¶ 18, 22–25, 91–96, 104–17.

Plaintiff describes a recurring pattern of trafficking at the Subject Hotel over more than four years. She alleges she was present there approximately three days per week during alternating weeks, although she generally did not stay overnight because she returned to her trafficker's residence to care for her son. *Id.* ¶¶ 31–32. Rooms were often paid for with cash or prepaid cards, and Plaintiff personally booked only a portion of the stays. *Id.* During those stays, four to ten men per day entered her room for short periods. *Id.* ¶ 32. Many were not registered hotel guests, Plaintiff kept few or no personal belongings at the hotel, and there was repeated male foot traffic at unusual hours. *Id.* ¶¶ 31–32, 75–77.

Hotel management allegedly responded to some of the indications of trafficking Plaintiff describes. On several occasions, management refused to rent Plaintiff a room or expelled her during periods of especially heavy visitor traffic. *Id.* ¶ 78. Approximately one or two weeks after the hotel expelled Plaintiff, however, the Subject Hotel would again accept reservations in her name and permit her to return. *Id.* Plaintiff also alleges that multiple hotel employees, including

management-level employees, observed or were made aware of indicators of her trafficking, yet the Franchisees continued renting rooms used for that trafficking. *Id.* ¶¶ 79–86.

Plaintiff attributes a substantial operational role to Wyndham. Among other things, Wyndham allegedly controlled or materially influenced systems governing reservations, check-in, payment, guest identification, customer information, reporting, training, inspections, internet access, housekeeping, and customer feedback. *Id.* ¶¶ 22–25, 91–96, 104–17. Wyndham also allegedly required hotel personnel to follow specified reporting and training procedures concerning suspected trafficking and maintained systems through which information about hotel operations and guest activity was transmitted to or available to Wyndham. *Id.* ¶¶ 91–96, 104–17.

These allegations support two venture theories in Plaintiff's beneficiary liability claim.[5] *First*, Plaintiff identifies a continuing relationship through which the Subject Hotel repeatedly provided rooms and related services to traffickers and received financial benefits from those transactions. *Id.* ¶¶ 99–105, 120. *Second*, she identifies a commercial hotel-operating venture among Wyndham and the Franchisees through which the entities operated the Subject Hotel, shared revenue, and pursued the property's profitability while allegedly facilitating trafficking. *Id.* ¶¶ 104–20. On both theories, Plaintiff alleges that each Defendant knowingly benefited from participation in a venture that it knew or should have known was engaged in violations of the TVPRA. *Id.* ¶¶ 118–22.

Plaintiff separately seeks to hold Wyndham vicariously liable for the Franchisees' alleged TVPRA violations. Her theory rests on Wyndham's asserted control over operational matters relevant to the conduct at issue, including mandatory training, staffing requirements, job

[5] Although Plaintiff asserts beneficiary liability under the TVPRA against all Defendants, only Wyndham and Nexus challenge the sufficiency of Plaintiff's allegations in support of that claim. Akshar seeks partial dismissal solely on statute of limitations grounds.

descriptions, employee discipline, reservations, payment systems, guest identification, reporting protocols, inspections, and required software and customer-management systems. *Id.* ¶¶ 113–17.

Finally, Plaintiff invokes the continuing tort doctrine and equitable tolling to avoid a statute of limitations bar as to conduct predating December 31, 2014. *Id.* ¶¶ 129, 133–34. Plaintiff supports her continuing tort and equitable tolling arguments by asserting that, while under her trafficker's control through at least September 30, 2015, she lacked the freedom to investigate her claims, identify responsible entities, obtain legal representation, or otherwise pursue her legal rights despite ordinary diligence. *Id.* ¶ 131. She further alleges that her trafficker's manipulation and coercion caused lasting effects on her mental capacity that persisted beyond the active trafficking period and continued to prevent her, despite ordinary diligence, from discovering and pursuing those rights. *Id.* ¶ 132.

**B. Procedural Background**

Plaintiff commenced this action on December 31, 2024. D.E. 1. Plaintiff later sought leave to amend her complaint and add Nexus as a defendant. D.E. 50. On February 2, 2026, Judge Clark issued a consent order permitting amendment, and Plaintiff filed the Amended Complaint the next day. *See* Am. Compl.

Akshar and Wyndham filed their Motions to dismiss under Rule 12(b)(6) on April 10, 2026. Akshar Mot.; Wyndham Mot. Plaintiff opposed both Motions on April 20, 2026, Pl.'s Akshar Opp'n; Pl.'s Wyndham Opp'n, and Akshar and Wyndham replied on April 27, 2026, Akshar Reply; Wyndham Reply. Nexus later appeared and moved to dismiss on July 24, 2026. Nexus Mot. Plaintiff opposed on August 3, 2026, Pl.'s Nexus Opp'n, and Nexus replied on August 10, 2026, Nexus Reply. The Motions are fully briefed and ripe for decision.

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) permits dismissal for failure to state a claim. Fed. R. Civ. P. 12(b)(6). When deciding a motion under Rule 12(b)(6), the Court accepts all well-pleaded factual allegations as true, construes them in the plaintiff's favor, and determines whether, under a reasonable reading of the pleading, the plaintiff may be entitled to relief. *Phillips*, 515 F.3d at 233. The defendant bears the burden of showing that dismissal is warranted. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

To survive a Rule 12(b)(6) motion, a plaintiff must plead enough factual matter to state a claim that is plausible on its face. *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court first identifies the elements of the claim, disregards allegations that are no more than legal conclusions, and then determines whether the well-pleaded factual allegations plausibly give rise to relief. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787–89 (3d Cir. 2016). Plausibility does not require probability. It requires enough factual content to permit a reasonable inference of liability and to raise a reasonable expectation that discovery will reveal evidence supporting the claim. *Id.* at 789; *Phillips*, 515 F.3d at 234.

### B. Federal Rule of Civil Procedure 8(a)

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule imposes "minimal burdens" at the pleading stage and requires sufficient factual allegations to provide a defendant fair notice of the claim and the grounds on which it rests. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019). The Court's Rule 8(a) inquiry is context dependent and considers, among other things, the nature of the claim and the availability of

information to the plaintiff. *Id.* Thus, allegations directed collectively at multiple defendants are not necessarily deficient. *See Ojeda v. Louis Berger Grp. (Domestic), Inc.*, No. 18-17233, 2021 WL 941875, at *4 n.9 (D.N.J. Mar. 11, 2021). The relevant question is whether the pleading, read as a whole, provides sufficient factual content to permit a reasonable inference that the particular defendant is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678.

### C. Federal Rule of Civil Procedure 12(e)

Federal Rule of Civil Procedure 12(e) permits a party to move for a more definite statement when a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The Rule addresses unintelligibility, not a lack of factual detail, and is not a vehicle to obtain greater particularization of allegations that can be explored through discovery. *See MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 737 (D.N.J. 2008); *Doe (A.S.F.) v. Wyndham Hotels & Resorts, Inc.*, No. 25-1550, 2026 WL 878295, at *8 (D.N.J. Mar. 30, 2026).

### D. TVPRA Beneficiary Liability

Section 1595(a) of the TVPRA creates a civil remedy for a trafficking victim against a perpetrator and against a person who knowingly benefits, financially or by receiving anything of value, from participation in a venture that the person knew or should have known engaged in an act violating Chapter 77 of Title 18. 18 U.S.C. § 1595(a). For a beneficiary liability claim based on sex trafficking, courts look to § 1591, the TVPRA provision that defines violations of the Act, to determine whether the alleged venture engaged in prohibited trafficking conduct. *See A.S.F.*, 2026 WL 878295, at *3–4.

At the pleading stage, the court must assess whether the plaintiff plausibly alleges that the defendant "(1) knowingly benefited financially or by receiving anything of value, (2) from

participation in a venture, (3) which defendants knew or should have known has engaged in" acts prohibited by the TVPRA. *Id.* at *3 (internal quotation marks omitted); *Cotugno*, No. 23-2973, 2024 WL 4500994, at *3.[6]

The Third Circuit has not yet defined "participation in a venture" under § 1595(a), although other courts of appeals have generally looked to the phrase's ordinary meaning. For instance, the Eleventh Circuit has explained that participation requires taking part in a common undertaking or enterprise involving risk and potential profit, and that observation alone is not participation. *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724–27 (11th Cir. 2021). More recently, the Eleventh Circuit reiterated that merely renting a room to a trafficker, even with actual or constructive knowledge of trafficking, does not by itself establish participation; something more than an ordinary arm's-length transaction is required. *A.G. v. Northbrook Indus., Inc.*, 171 F.4th 1257, 1268–70 (11th Cir. 2026). At the same time, § 1595(a) does not require the venture's primary purpose to be sex trafficking. *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 554 (7th Cir. 2023). A commercial business venture may qualify when the alleged TVPRA violation falls within the scope of that venture. *Id.* at 553–54, 561–62.

## III. DISCUSSION

### A. Wyndham's Motion to Dismiss

Wyndham moves to dismiss both claims asserted against it: Plaintiff's claim for beneficiary liability under § 1595(a) and her claim seeking to hold Wyndham vicariously liable for the Franchisees' alleged TVPRA violations. Wyndham Mot. at 1. Because Plaintiff's allegations of

[6] As noted below, Wyndham does not presently challenge whether Plaintiff was a trafficking victim or whether Wyndham knowingly received financial benefits from the operation of the Subject Hotel. Wyndham Mot. at 5–12; Wyndham Reply at 1–8. Its Motion instead focuses on the participation and knowledge prongs of the beneficiary liability analysis under the TVPRA.

Wyndham's operational control and access to hotel-specific information plausibly support beneficiary and vicarious liability, the Court will **DENY** Wyndham's Motion.

To state a claim for beneficiary liability under § 1595(a), Plaintiff must plausibly allege that Wyndham (1) knowingly benefited, financially or by receiving anything of value, (2) from participation in a venture, (3) that Wyndham knew or should have known was engaged in sex trafficking prohibited by § 1591. 18 U.S.C. § 1595(a). Wyndham principally challenges the latter two requirements: whether Plaintiff has plausibly alleged Wyndham's participation in either alleged venture and whether Wyndham knew or should have known that the venture was engaged in trafficking. Wyndham Mot. at 4–12.

Plaintiff's vicarious liability theory depends on both a plausible agency relationship between Wyndham and the Franchisees and a plausible underlying TVPRA violation by the Franchisees. *See id.* at 12–15. The Court addresses Wyndham's beneficiary liability first, then its vicarious liability.[7]

*1. Beneficiary Liability Against Wyndham (Count One)*

In Count One, Plaintiff alleges that Wyndham participated in a venture and that Wyndham knew or should have known that the venture was engaged in trafficking. The Court addresses each in turn.

[7] Wyndham also argues that Plaintiff cannot impose joint and several liability on Wyndham and the Franchisees. Wyndham Mot. at 15. This argument is premature. Joint and several liability concerns the allocation of damages after liability is established. *See A.S.F.*, 2026 WL 878295, at *8. No judgment has been entered, and the Court need not determine at the pleading stage how damages would be allocated if Plaintiff ultimately proves liability against more than one Defendant. *Id.*

a. Plaintiff plausibly alleges Wyndham's participation in a venture

Plaintiff has plausibly alleged Wyndham's participation in a venture. Section 1595(a) requires more than allegations of financial benefit from trafficking occurring at a franchised hotel. A plaintiff must plausibly allege that a defendant took part in the hotel's operation beyond merely licensing its brand and collecting fees. *See* 18 U.S.C. § 1595(a); *see A.S.F.*, 2026 WL 878295, at *4–6.

Plaintiff alleges considerably more than brand licensing and receipt of franchise fees. For example, she alleges that Wyndham controlled the systems through which rooms at the Subject Hotel were reserved and paid for, dictated check-in and identification procedures, restricted the Franchisees' ability to refuse or cancel reservations, and collected and analyzed guest information. Am. Compl. ¶¶ 91–92. Wyndham also allegedly controlled employee training and trafficking response procedures, required hotel staff to report suspected trafficking, and maintained safety and security functions. *Id.* ¶¶ 91–96. Plaintiff further alleges that Wyndham played a primary role in renting rooms, received fees based on gross room revenue, and jointly operated the hotel with the Franchisees to maximize that revenue. *Id.* ¶¶ 97, 103, 108–09.

Plaintiff's specific allegations distinguish this case from one resting only on generalized knowledge of trafficking, online reviews, franchise fees, or ordinary brand oversight. *Cf. Doe (P.B.) v. Wyndham Hotels & Resorts, Inc.*, No. 23-1493, 2023 WL 8890229, at *4–5 (D.N.J. Dec. 26, 2023) (rejecting a plaintiff's TVPRA claim based only on general allegations "that sex trafficking is a serious problem afflicting this country and that it is taking place largely at hotels"). Plaintiff's allegations also parallel those another court in this District found sufficient in *A.S.F.*, where the defendant allegedly controlled reservation, check-in, and payment processes, imposed reporting and training requirements, and retained substantial control over hotel operations. 2026

WL 878295, at *4–6. Other courts in this District have reached similar conclusions on comparable allegations. *See Doe (A.L.H.) v. Wyndham Hotels & Resorts, Inc.*, No. 25-579, 2025 WL 3712278, at *3–4 (D.N.J. Dec. 22, 2025) (finding beneficiary liability plausibly alleged where defendant exercised operational control over hotel, including reservation and payment processes, and required hotel staff to report suspected trafficking); *Doe (M.J.J.) v. Wyndham Hotels & Resorts, Inc.*, No. 24-6490, 2025 WL 342092, at *3–4 (D.N.J. Jan. 30, 2025) (similar).

Wyndham's arguments to the contrary are unavailing. Wyndham characterizes Plaintiff's allegations as seeking to impose liability merely because Wyndham failed to exercise "reasonable diligence" to prevent Plaintiff's trafficking at the Subject Hotel. Wyndham Mot. at 10. Wyndham's characterization understates the allegations in the Amended Complaint. As discussed above, Plaintiff specifically alleges that Wyndham itself controlled operational systems central to the Subject Hotel's room rentals and operations and shared in the resulting revenue. Wyndham's additional argument that Plaintiff must allege it entered into the franchise relationship for the purpose of facilitating trafficking likewise demands more than § 1595(a) requires. *See id.* at 9–10. At this stage, the allegations of Wyndham's affirmative operational role are sufficient.[8]

Accepting the well-pleaded allegations as true, Plaintiff has plausibly alleged Wyndham's participation in the commercial hotel-operating venture described in the Amended Complaint.

---

[8] To the extent Wyndham argues that Plaintiff must allege a venture directly with her trafficker or a franchise relationship formed to promote trafficking, the Court rejects that premise. Wyndham Mot. at 5–10. In *A.G.*, the Eleventh Circuit held that a defendant "must take part in a common enterprise to the extent that they share legal risks and potential profits with traffickers" to "participate in a venture" under § 1595. 171 F.4th at 1268. Courts in this District have declined to apply such a narrow definition of "participation," instead recognizing that the relevant venture can be the business of operating the hotel itself. *A.S.F.*, 2026 WL 878295, at *4–5; *M.J.J.*, 2025 WL 342092, at *3–4; *see also G.G.*, 76 F.4th at 554 ("the relevant venture under Section 1595 need not be specifically a sex trafficking venture") (citations omitted). This Court follows the approach adopted by other courts in this District.

b. Plaintiff plausibly alleges that Wyndham knew or should have known the venture engaged in trafficking

Plaintiff has also plausibly alleged that Wyndham knew or should have known about her trafficking at the Subject Hotel. At the pleading stage, Plaintiff must allege facts that support a reasonable inference that Wyndham knew, or through reasonable care or diligence should have known, that the venture was engaged in trafficking. *See Cotugno*, 2024 WL 4500994, at *2, *4.

General awareness of trafficking in the hotel industry must be connected to the venture through particularized factual allegations. *See A.S.F.*, 2026 WL 878295, at *6–7. For example, in *A.S.F.*, another TVPRA case in this District against Wyndham involving similar facts, the plaintiff alleged that she renewed her room reservations daily with cash at the front desk, five to ten men visited her room each day during stays lasting several weeks, and her trafficker refused housekeeping services. *Id.* at *7. Those facts, combined with Wyndham's inspections and requirements that staff report suspected trafficking, supported a reasonable inference that Wyndham should have known of her trafficking. *Id.*; *see also A.L.H.*, 2025 WL 3712278, at *4 (plaintiff sufficiently alleged knowledge where hotel employees observed signs of trafficking and the defendant's policies required them to report suspected trafficking).

Plaintiff's allegations are not merely based on Wyndham's general awareness that sex trafficking occurs in hotels. *Cf. P.B.*, No. 23-1493, 2023 WL 8890229, at *4–5 (allegations of general awareness are insufficient to support a TVPRA claim). Instead, Plaintiff alleges facts specific to the Subject Hotel. She alleges years of repeated use of the same hotel for trafficking; cash and prepaid card payments; four to ten short-term male visitors per day; unusually heavy foot traffic by unregistered men; few personal belongings; and a pattern in which management removed Plaintiff during periods of heavy visitor traffic but allowed her to return and rent again soon

afterward. Am. Compl. ¶¶ 31–32, 75–81. Those allegations concern Plaintiff's own trafficking at the Subject Hotel, not trafficking in the hotel industry generally.

Plaintiff connects this hotel-level information to Wyndham, alleging that Wyndham required reporting from the Subject Hotel about suspected trafficking, imposed training obligations, conducted or required inspections, collected guest and customer information through centralized systems, and maintained operational policies relevant to trafficking detection and response. *Id.* ¶¶ 22–25, 91–96, 104–17. The Court concludes that these allegations are sufficient at this stage to support a reasonable inference that Wyndham should have known that the venture operating the Subject Hotel was engaged in trafficking activity. *See A.S.F.*, 2026 WL 878295, at *6–7; *A.L.H.*, 2025 WL 3712278, at *4.[9]

The Court therefore will **DENY** Wyndham's Motion to dismiss Count One for failure to plead actual or constructive knowledge.

2. *Vicarious Liability Against Wyndham (Count Two)*

The Court next turns to Plaintiff's second claim against Wyndham: vicarious liability. For the reasons set forth below, Plaintiff also plausibly alleges a basis to hold Wyndham vicariously liable for the Franchisees' alleged TVPRA violations, since she has adequately alleged an agency relationship between Wyndham and the Franchisee Defendants.

"An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1434 (3d Cir. 1994) (quoting *Sears Mortg.*

[9] Wyndham argues that overseeing the hotel and requiring its staff to report suspected trafficking do not establish that it received notice of *Plaintiff's* trafficking. Wyndham Mot. at 11; Wyndham Reply at 6–8. But actual knowledge is not required. Plaintiff is only required to plausibly allege that Wyndham should have discovered the trafficking through reasonable care or diligence. *See Cotugno*, 2024 WL 4500994, at *4. Plaintiff has met this burden.

*Corp. v. Rose,* 634 A.2d 74, 79 (1993)). Whether a franchise relationship constitutes an agency relationship "depends in each case upon the nature and extent" of the "control retained by the franchisor . . . as defined in the franchise agreement or by the actual practice of the parties." *Drexel v. Union Prescription Ctrs., Inc.*, 582 F.2d 781, 786 (3d Cir. 1978).

In the TVPRA context, the relevant question regarding agency is whether the franchisor allegedly had authority to control aspects of hotel operations connected to the TVPRA claim. *A.S.F.*, 2026 WL 878295, at *7. To survive a motion to dismiss, "a [p]laintiff need not prove an agency relationship . . . but rather, must set forth allegations from which the Court could plausibly infer that such a relationship exists." *E.B. v. Howard Johnson by Wyndham Newark Airport*, No. 21-2901, 2023 WL 12053001, at *10 (D.N.J. Dec. 29, 2023).

Wyndham argues that Plaintiff alleges an agency relationship based only on its enforcement of brand standards. Wyndham Mot. at 12–15; *see also Burnette v. Hilton Franchise Holdings LLC*, No. 17-12128, 2021 WL 118924, at *8 (D.N.J. Jan. 13, 2021) (no agency relationship where franchisor did not have day-to-day control over the hotel and just required and enforced brand standards).

Plaintiff, however, alleges a much higher degree of involvement in the Subject Hotel's operations by Wyndham than just requiring adherence to its brand uniformity standards. Specifically, Plaintiff alleges that Wyndham exercised systematic and ongoing control over the Subject Hotel by:

1. Prescribing detailed operating requirements and methods through franchise agreements, manuals, and policies. Am. Compl. ¶¶ 114–115.

2. Controlling employee training and staffing, prescribing job duties and hiring requirements, overseeing discipline and termination, and providing benefits. *Id.* ¶ 116(a)–(e), (h)–(k).
3. Controlling reservations, payments, pricing, check-in procedures, identification requirements, and restrictions on room rentals. *Id.* ¶ 92(a)–(f), (h).
4. Requiring technology and guest-data systems and using those systems to monitor guests and supervise daily operations. *Id.* ¶¶ 92(g), (i), 116(g), (l), (o), (v).
5. Prescribing housekeeping protocols and controlling guest internet access. *Id.* ¶ 91(j)–(l).
6. Directing trafficking prevention, training, reporting, and incident response, including referrals to law enforcement. *Id.* ¶ 91(a)–(i).
7. Managing guest complaints and retaining authority to issue refunds at the franchisees' expense. *Id.* ¶ 116(m)–(n).
8. Auditing records, conducting unannounced inspections, and requiring detailed operational reports. *Id.* ¶ 116(q)–(r), (u).
9. Restricting vendors, controlling marketing, and prescribing insurance requirements. *Id.* ¶ 116(f), (p), (t).
10. Enforcing compliance through fines, additional training, corrective action plans, and franchise termination, while retaining authority to revise operational requirements. *Id.* ¶ 116(s), (w).

Courts in this District have repeatedly found comparable allegations sufficient to plead agency in hotel-specific TVPRA cases. In *A.S.F.*, the court held that alleged control over training, discipline, recordkeeping, reporting, inspections, corrective action, and a central reservation

system supported a plausible agency relationship. 2026 WL 878295, at *7–8. The court in *A.L.H.* reached the same conclusion based on allegations of operational support, mandatory training, control over job descriptions and channels for guest complaints, inspections, and termination rights under the franchise agreement. 2025 WL 3712278, at *5. And in *P.B.*, while dismissing the direct beneficiary claim in that case, the court held that allegations concerning control over "pricing and reservations, regularly conducted inspections," and termination rights under the franchise agreement were enough to plead agency. 2023 WL 8890229, at *5.

Wyndham relies on *Burnette*, a premises liability case decided on summary judgment after development of the franchise agreement and the parties' actual practices. 2021 WL 118924, at *1, *8–9. There, the court concluded on that record that the franchisor "[did] not exercise day-to-day control over the [h]otel." *Id.* at *9. Here, by contrast, the Court must accept Plaintiff's well-pleaded factual allegations as true. Whether Wyndham actually possessed or exercised the control Plaintiff alleges is not yet before the Court.

The Court also finds that Plaintiff plausibly alleges an underlying TVPRA violation by the Franchisees, which is necessary to impute their conduct to Wyndham. Plaintiff alleges that Akshar and Nexus operated and managed the Subject Hotel, employed its staff, repeatedly received revenue from rooms used for her trafficking, continued renting rooms despite recurring trafficking indicators, periodically removed Plaintiff during periods of unusually heavy male traffic, later allowed her to return, and failed to intervene or report despite management-level awareness of those circumstances. Am. Compl. ¶¶ 17, 35, 75–86, 98–105, 118–22. Those allegations plausibly support the same elements of benefit, participation, and knowledge discussed above as to the hotel-level entities. *See A.S.F.*, 2026 WL 878295, at *8.

The Court will therefore **DENY** Wyndham's Motion to dismiss Count Two.

**B. Wyndham's Motion for a More Definite Statement**

In the alternative to dismissal, Wyndham seeks a more definite statement concerning the dates of Plaintiff's trafficking and the circumstances surrounding its end. Wyndham Mot. at 15–16. The question under Rule 12(e) is whether Wyndham can "reasonably prepare a response" based on the pleading. *See* Fed. R. Civ. P. 12(e). The Court finds that based on the Amended Complaint, Wyndham can. Plaintiff identifies the Subject Hotel, its address, the relevant entities, a trafficking period running from April 1, 2011 through September 30, 2015, the approximate pattern and frequency of her presence at the hotel, the trafficking indicators allegedly visible there, and the conduct she attributes to each category of Defendant. Am. Compl. ¶¶ 14–18, 26–32, 75–86, 91–117. Wyndham can reasonably respond to those allegations. The precise dates of each trafficking episode and additional detail about how the trafficking ended are subjects for discovery. *See A.S.F.*, 2026 WL 878295, at *8 (denying the same request where an approximate trafficking period gave the defendant sufficient notice to answer). Accordingly, Wyndham's Rule 12(e) request will be **DENIED**.

**C. Nexus's Motion to Dismiss**

Nexus moves to dismiss under Rule 12(b)(6), arguing that Plaintiff fails to state a claim against it because she impermissibly groups Nexus together with Akshar under the defined term "Franchisees." Nexus Mot. at 7–13. The Court disagrees.

Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A pleading may fail that requirement when it uses a collective label in a way that leaves the Court and defendants unable to determine "who did what to whom when." *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 387 (D.N.J. 2019); *see also Japhet v. Francis E. Parker Memorial Home, Inc.*, No. 14-1206, 2014 WL 3809173, at *2 (D.N.J. July 31, 2014).

There is not, however, a categorical rule forbidding allegations that apply to more than one defendant. Instead, the pleading must make clear "what each particular defendant is alleged to have done." *Ojeda*, 2021 WL 941875, at *4 n.9 (citations omitted); *see also Longmeadow One Solar, LLC v. Trina Solar Co.*, No. 23-21235, 2025 WL 2476522, at *4 (D.N.J. Aug. 28, 2025).

Here, Plaintiff identifies only two hotel-level entities connected to one property: Akshar and Nexus. Am. Compl. ¶¶ 15–17. Plaintiff then defines those entities as the "Franchisees" and expressly alleges that both owned, operated, controlled, and managed the Subject Hotel and employed its staff during the relevant period. *Id.* ¶¶ 17, 35. When Plaintiff thereafter alleges that the "Franchisees" operated the property, received room revenue, employed personnel who observed trafficking indicators, continued renting rooms, removed Plaintiff during periods of heavy visitor traffic, later permitted her return, and participated in the alleged hotel-based venture, the defined term of "Franchisees" communicates that Plaintiff attributes those acts to both Akshar and Nexus. *Id.* ¶¶ 29–37, 75–86, 98–105, 118–22. Plaintiff's Amended Complaint therefore meets the threshold of what Rule 8 requires.

In support of its Motion, Nexus argues that Plaintiff identifies no Nexus employee, policy, communication, or revenue stream connecting it to the alleged trafficking. Nexus Mot. at 8–11; Nexus Reply at 2–5. Rule 8 requires facts supporting a reasonable inference that Nexus engaged in the challenged conduct; it does not require Plaintiff, before discovery, to establish precisely how companies jointly operating a hotel divided their responsibilities. *See Longmeadow*, 2025 WL 2476522, at *4 (permitting overlapping allegations where pleaded facts connected related entities to the challenged conduct and discovery could clarify their respective roles); *Freeman v. Amazon.com Services, LLC*, No. 24-8181, 2026 WL 496630, at *4 (D.N.J. February 23, 2026) (rejecting a group-pleading challenge where the complaint "contains overlapping allegations

against each Defendant for engaging in the same or similar conduct"). Plaintiff explains Nexus's role by alleging that Akshar and Nexus jointly operated and managed the Subject Hotel and attributing specific conduct during those shared operations to both Franchisees. *Cf. Japhet*, 2014 WL 3809173, at *2 (rejecting collective allegations that did not provide a basis to identify each defendant's involvement in the challenged acts); *Mills*, 406 F. Supp. 3d at 386–87 (same).

The allegations attributed to Nexus also map onto the § 1595(a) elements discussed above.[10] Plaintiff alleges that Nexus financially benefited from room rentals at the Subject Hotel. Am. Compl. ¶¶ 98–105, 119–20. She alleges that Nexus participated in the operation of the hotel and in the challenged course of continued room rentals and services. *Id.* ¶¶ 17, 75–86, 98–105, 119–20. And she alleges that Nexus, through the management and personnel of the hotel it allegedly operated, knew or should have known of the trafficking because those personnel observed recurring red flags and management itself periodically removed Plaintiff during periods of heavy visitor traffic. *Id.* ¶¶ 32, 78–85, 119–20. While Plaintiff's allegations may ultimately prove inaccurate, they are not merely a formulaic recitation of the statute. Her allegations identify the financial benefit, the alleged participation, and the hotel-specific facts supporting knowledge.

The Court does not hold that the evidence will establish Nexus's actual role. At this stage, Plaintiff has given Nexus fair notice and pleaded a plausible basis for attributing the hotel-level conduct to it. As a result, Nexus's Motion to dismiss for improper group pleading is **DENIED**.[11]

---

[10] To reiterate, to establish beneficiary liability under the TVPRA, a plaintiff must establish that a defendant (1) knowingly benefited, financially or by receiving anything of value, (2) from participation in a venture, (3) that the defendant knew or should have known was engaged in sex trafficking prohibited by 18 U.S.C. § 1591. 18 U.S.C. § 1595(a).

[11] Nexus also states that it reserves a potential Rule 15(c) relation-back defense concerning the date on which it was added to this action. Nexus Mot. at 18 n.5. Nexus does not ask the Court to adjudicate that defense on the present motion. The Court therefore does not address it.

### D. Akshar's Partial Motion and Nexus's Alternative Limitations Argument

Akshar does not seek dismissal of Plaintiff's TVPRA claim in its entirety. It accepts for purposes of its Motion that Plaintiff alleges trafficking through September 30, 2015, within ten years of filing this action. Akshar instead seeks a ruling that Plaintiff cannot recover for any trafficking occurring before December 31, 2014, which it argues is outside the limitations period. Akshar Mot. at 1–2, 5–12. Nexus adopts the same argument as an alternative basis for partial dismissal. Nexus Mot. at 13–18; Nexus Reply at 6–8. For the reasons set forth below, the Court will **DENY** both requests.

Plaintiff plausibly alleges a continuous course of beneficiary participation, since the Amended Complaint does not conclusively establish that Plaintiff's claim rests on separate, independently actionable events. Plaintiff's Amended Complaint is therefore not time-barred on its face so partial dismissal is improper.

Section 1595(c)(1) provides a ten-year limitations period, 18 U.S.C. § 1595(c)(1), and Plaintiff filed this action on December 31, 2024, D.E. 1. Because the statute of limitations is an affirmative defense, dismissal under Rule 12(b)(6) on statute of limitations grounds is appropriate only if the pleading itself establishes that defense. *Schmidt v. Skolas*, 770 F.3d 241, 249–51 (3d Cir. 2014). Plaintiff has invoked the continuing tort doctrine, and the Amended Complaint alleges facts directed to that issue—namely, that Defendants engaged in a "continuous and ongoing" course of conduct and that Plaintiff's trafficking and Defendants' alleged facilitation continued into the limitations period. Am. Compl. ¶¶ 129, 133–34. At this stage, the Amended Complaint does not establish on its face that Plaintiff is barred from recovering for conduct predating December 31, 2014.

In her Amended Complaint, Plaintiff alleges that, from April 1, 2011 through September 30, 2015, she was "continuously and unlawfully trafficked" at the Subject Hotel and was trafficked there "an incalculable number of times." Am. Compl. ¶¶ 27, 30. She further alleges that Defendants "developed and maintained a continuous business relationship and implicit understanding with sex traffickers at the Subject Hotel," generated revenue through that ongoing relationship, and participated in the alleged trafficking scheme by "continually renting rooms to traffickers," thus facilitating their activity. *Id.* ¶ 120(a), (d)–(e). These allegations describe continuing affirmative conduct by Defendants that extended into the limitations period, not merely continuing effects from conduct completed before December 31, 2014.

Two recent decisions in this District rejected limitations challenges to materially similar TVPRA pleadings. In *Cotugno*, the court denied a Rule 12(b)(6) limitations challenge, finding that the continuing tort doctrine allowed the plaintiff to pursue earlier acts that were part of the same alleged course of trafficking. 2024 WL 4500994, at *2 & nn.4–5. Similarly in *A.S.F.*, the court denied a statute of limitations challenge where the plaintiff alleged continuous trafficking through a date within the ten-year limitations period. 2025 WL 3754148, at *3 & n.3. This Court finds the reasoning in these cases persuasive.

Akshar argues that the continuing tort doctrine does not apply because each alleged instance of trafficking is independently actionable and therefore should be treated as a discrete event. Akshar Mot. at 6–8. In support, Akshar relies on decisions distinguishing discrete acts from claims that, by their nature, depend on repeated conduct. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15 (2002) (distinguishing separately actionable employment decisions from a hostile-work-environment claim, which "by [its] very nature involves repeated conduct"); *Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 236 (3d Cir. 2014) (explaining that

the continuing tort doctrine is narrow and applies where otherwise disconnected incidents reveal a larger unlawful pattern only in retrospect). But Plaintiff does not allege discrete, separately actionable acts by Defendants. Rather, she has alleged that Defendants participated in and knowingly benefited from an ongoing trafficking relationship, evidenced by a "continuous business relationship and implicit understanding" with traffickers, continual room rentals, and continuing facilitation. Am. Compl. ¶ 120(a), (d)–(e).

Because Plaintiff alleges a continuing course of trafficking and facilitation through September 30, 2015, within the applicable limitations period, the Court concludes that her TVPRA claim is timely under the continuing tort doctrine. Accordingly, the Court need not reach Plaintiff's alternative argument that equitable tolling applies.

## IV. CONCLUSION AND ORDER

For the reasons explained above,

**IT IS**, on this **18th** day of November, 2026,

**ORDERED** that Akshar's Partial Motion to Dismiss, D.E. 68, is **DENIED**; and it is further

**ORDERED** that Wyndham's Motion to Dismiss or, in the Alternative, for a More Definite Statement, D.E. 69, is **DENIED**; and it is further

**ORDERED** that Nexus's Motion to Dismiss, D.E. 88, is **DENIED**; and it is finally

**ORDERED** that within **30 days** of this Memorandum Order, the parties shall contact the Chambers of the Honorable James B. Clark, U.S.M.J., to schedule a status conference.

Evelyn Padin, U.S.D.J.